UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cr-00023-JPH-CMM |
| | ) | |
| JAMES NICHOLAS SMITH, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO SUPPRESS**

James Smith was arrested for providing false information to the police. During a search incident to arrest, police officers found cash, a gun, drugs, and scales. Defendant has filed a motion to suppress, arguing that these items were discovered and seized in violation of the Fourth Amendment. Dkt. [29]. For the reasons stated below, the motion is **DENIED**.

## I.
## Facts

Six Terre Haute police officers went to a Motel 6 in connection with an investigation of an individual named Evan Sapp, who was reported to be armed and dangerous. Dkt. 29-2; dkt. 36-1 ¶ 4. One of the officers, Sergeant Lockard, saw Sapp standing next to Defendant, James Smith, outside the Motel 6. Dkt. 29-2. Sergeant Lockard observed Defendant walking back and forth, looking over his shoulder, and frequently changing his direction of travel. *Id.* Sergeant Lockard notified the other officers by radio of Defendant's odd behavior. Dkt. 36-1 ¶ 6.

1

Detective LaFave heard the report from Sergeant Lockard, saw Defendant, and also concluded that Defendant was acting suspiciously. *Id.*; dkt. 29-2. Detective LaFave, with his gun holstered and his badge visible, approached Defendant outside of the Motel 6 shortly after Defendant exited the building. Dkt. 29-2; dkt. 36-1 ¶ 7. He asked Defendant if he could talk to him, and Defendant agreed. Dkt. 36-1 ¶ 8.

Detective LaFave asked Defendant for his name, and Defendant replied, "Nick Smith." *Id.*; dkt. 29-2. Detective LaFave thought he recognized Defendant from an investigation of an individual named James Smith. Dkt. 29-2; dkt. 36-1 ¶ 8. Detective LaFave pulled up a picture of James Smith on his phone and recognized him as the man he was speaking with who had just identified himself as Nick Smith. Dkt. 36-1 ¶ 8. Detective LaFave also noticed a unique tattoo on Defendant that matched one of James Smith's tattoos. *Id.* ¶ 9; dkt. 29-2.

Detective LaFave told Defendant he did not believe his name was Nick Smith and continued to ask him his name. Dkt. 29-2; dkt. 36-1 ¶ 10. Defendant, starting to sweat and looking nervous, insisted that his name was Nick Smith. Dkt. 29-2; dkt. 36-1 ¶¶ 9, 10. Defendant also claimed that he did not have a middle name. Dkt. 36-1 ¶ 10. Detective LaFave then asked Defendant to show him the tattoo again, but Defendant refused. Dkt. 29-2. Convinced that Defendant was trying to mislead him, Detective LaFave arrested Defendant for False Informing. Dkt. 36-1 ¶ 12.

During a search incident to arrest, officers recovered $1,064 in U.S. currency from Defendant's pockets and a gun, methamphetamine, marijuana, digital scales, two cell phones, and two hotel room keys from his backpack. Dkt. 29-2.

Defendant was indicted for possession with intent to distribute, carrying a firearm in relation to a drug trafficking crime, and felon in possession of a firearm. Dkt. 1. Defendant filed a motion to suppress, seeking to exclude the evidence obtained from the search. Dkt. 29.

## II.
## Discussion

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. Amend. IV. The principal remedy for a violation of this right is the exclusionary rule, which "requires trial courts to exclude unlawfully seized evidence in a criminal trial." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). Here, Defendant argues that the exclusionary rule applies because he was subjected to an unlawful investigatory stop and thereafter unlawfully searched. The Court addresses each argument in turn.

### A.
### Detective LaFave's conversation with Defendant

Defendant contends he was subjected to an unlawful investigatory stop, also known as a *Terry* stop, when Detective LaFave asked if he would speak with him. But "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . . .", *Fla. v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Fla. v. Royer*, 460 U.S.

3

491, 497 (1983)), and "a seizure does not occur merely because a police officer approaches an individual and asks him or her questions," *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015). No justification is needed for consensual encounters because participation is voluntary and a "reasonable person would feel free to disregard the police and go about his or her business." *Id.*[1] So long as the police-citizen encounter is consensual, there is no Fourth Amendment scrutiny.

To determine whether an encounter between police and a citizen in a public place is consensual, the "crucial test" is whether a reasonable person would believe that he or she was not free to ignore the police and leave. *Bostick*, 501 U.S. at 437. A court considers all facts and circumstances, such as: (1) "the threatening presence of several officers," (2) whether the police officers display their weapons, (3) any "physical touching of the private citizen," (4) the "use of forceful language or tone of voice," (5) the location of the encounter, (6) "whether police made statements to the citizen intimating that he or she was a suspect of a crime," (7) "whether the citizen's freedom of movement was intruded upon in some way," and (8) "whether the officers informed the suspect that he or she was free to leave." *Smith*, 794 F.3d at 684

---

[1] Defendant also claims that the stop violated "Article 1, Section 11 of the Indiana Constitution." Dkt. 39 at 1. The Indiana Constitution cannot serve as grounds for suppressing evidence because Defendant has been indicted in federal court and federal law controls. *See United States v. Singer*, 943 F.2d 758, 761 (7th Cir. 1991) ("[F]ederal standards control the admissibility of evidence in a federal prosecution even though the evidence was seized by state officials...and accordingly, the officers' compliance or lack of compliance with [state] law...is irrelevant.") (citations omitted).

(internal citations omitted). These factors are "neither exhaustive nor exclusive", but merely examples of what a court may consider. *Id.*

Here, the encounter was initially consensual. It took place during the day in a well-lit and open public space. Dkt. 36-1 ¶ 7. Detective LaFave approached Defendant in a non-threatening manner. *Id.* Detective LaFave's gun was holstered and he did not physically touch Defendant. *Id.* Detective LaFave identified himself as a police officer and asked Defendant in a conversational tone if he could speak with him. *Id.* Detective LaFave did not physically block Defendant or otherwise prevent him from walking away. *Id.*

Defendant argues that because "other officers had surrounded the Defendant on the hotel property . . . [n]o reasonable person would have felt free to walk away." Dkt. 29-1 at 5. But the uncontroverted evidence is that Detective LaFave spoke with Defendant alone without any other officers in close physical proximity. Defendant claims that "it would make sense" that the other officers were in the parking lot and that Defendant "would have likely been able to see" them, dkt. 39 at 4, but this is mere is speculation. Defendant has provided no evidence that he was surrounded by the police during the conversation with Detective LaFave or that he even saw the other officers.

Defendant next contends that the stop was not consensual because he was leaning against the Motel 6 during the conversation and "felt trapped against the wall and unable to walk along the sidewalk without talking to Detective LaFave." *Id.* at 3. But regardless of how Defendant felt, the facts are

that he "could have walked either way on the sidewalk" because Detective LaFave "did not block his movement in any way." Dkt. 36-1 ¶ 7.

The Court concludes that a "reasonable person" would have felt free to walk away at this point, *Bostick,* 501 U.S. at 434, and would not have found Detective LaFave's conduct "coercive", *Smith,* 794 F.3d at 687, or to mean that he was the focus of Detective LaFave's investigation. The "'reasonable person' test presupposes an *innocent* person." *Bostick,* 501 U.S. at 437 (emphasis in original). That Defendant may have felt anxious and panicked when Detective LaFave approached and asked if he could speak with him is not relevant. While Defendant's subjective state of mind may understandably have been influenced by the fact he was carrying methamphetamine, marijuana, scales, cash, and a gun, Detective LaFave's conduct must be judged from the viewpoint of a reasonable person in Defendant's position.

The facts presented here are in stark contrast to the facts in *Smith,* a case relied upon by Defendant. In *Smith,* the defendant was approached by two police officers at night in a dark alley. 794 F.3d at 683–84. While the officers obstructed the defendant's path, one officer approached the defendant with his hand on his gun and without any introduction, identification, or salutation asked, "[a]re you in possession of any guns, knives, weapons or anything illegal?" *Id.* at 684–85. Concluding that a reasonable person in the defendant's situation would not have felt at liberty to ignore the police presence and go about his business, the court found that the defendant had been seized for purposes of the Fourth Amendment. *Id.* at 685.

Defendant further argues that even if the conversation with Detective LaFave began as a consensual encounter, it became a seizure when Detective LaFave looked at his phone to verify Defendant's identity. Dkt. 39 at 4. A consensual encounter may transform into a seizure when a police officer tells the person that he or she is suspected of committing a crime. *See e.g.*, *United States v. Borys*, 766 F.2d 304, 311 (7th Cir. 1985) (holding that a police-citizen encounter was initially consensual, but when the police "explained that they suspected [the defendant] of transporting drugs and asked permission to search his luggage, the consensual questioning had ripened into an investigative stop."). The crucial question is whether a reasonable person would not feel free to leave at that point.

Detective LaFave's conversation began as a consensual encounter, and Detective LaFave had reasonable suspicion—justifying a *Terry* stop—at the point he recognized Defendant as James Smith from a picture he found on his phone. Dkt. 36-1 ¶ 8. Reasonable suspicion to support a *Terry* or investigative stop exists where an officer is "able to identify some 'particularized and objective basis' for thinking the person stopped is or may be about to engage in unlawful activity." *United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016). The reasonableness of the stop requires an objective examination of the totality of the circumstances. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2001); *United States v. Barnett*, 505 F.3d 637 (7th Cir. 2007).

Here, Detective LaFave had sound reasons supported by specific articulable facts for suspecting that Defendant was involved with criminal

7

activity. The Motel 6 is in a high-crime area for which the police frequently receive reports "regarding drugs and stolen property." Dkt. 36-1 ¶ 5. Detective LaFave heard that officers observed Defendant with Sapp, who Detective LaFave knew had a prior conviction for possession of methamphetamine and was reported to be armed and dangerous. *Id.* ¶¶ 4, 6. Detective LaFave observed Defendant acting suspicious by "pacing back and forth, looking over his shoulder," and frequently changing the direction he was walking. *Id.* ¶ 6. Finally, Detective LaFave reasonably believed that Defendant had just lied to him about his identity. *Id.* ¶ 8.

The Court need not determine whether any of these facts alone would be sufficient to support a *Terry* stop because, when viewed together, they provide ample basis for Detective LaFave to have continued questioning Defendant even if he no longer felt free to leave. *See, e.g., United States v. Oglesby*, 597 F.3d 891 (7th Cir. 2010) (finding reasonable suspicion when the defendant acted nervously and evasively while in a high crime area); *United States v. Harris*, 218 F. App'x 525, 528 (7th Cir. 2007) (holding that a police officer had reasonable suspicion in part when the defendant was in a high-crime area and was "continuously looked over his shoulder" when walking away from the police); *United States v. Rivers*, 121 F.3d 1043, 1044 (7th Cir. 1997) (holding that a police officer had reasonable suspicion to support a search based in part on the defendant's proximity to an individual wanted on an open warrant). The scope and duration of the stop that followed was minimal and reasonable in

relation to the circumstances. *United States v. Robinson,* 30 F.3d 774, 784 (7th Cir. 1994).

Because Detective LaFave had reasonable suspicion to support the investigatory stop that emerged from his consensual encounter with Defendant, he was free to consider the additional statement made by Defendant—that he did not have a middle name—dkt. 36-1 ¶ 10—in concluding there was probable cause Defendant had committed a crime.

### B.
### Detective LaFave's arrest of Defendant

Defendant argues that the search incident to arrest was unlawful because there was no probable cause to arrest him. A search incident to arrest does not violate the Fourth Amendment "where the arresting officer is authorized by state or municipal law to effect a custodial arrest and the officer has probable cause to make such arrest." *United States v. Kincaid,* 212 F.3d 1025, 1028 (7th Cir. 2000). "Probable cause for an arrest exists when a person could reasonably believe, in light of the facts and circumstances within the knowledge of the arresting officer at the time of the arrest, that the suspect had committed or was committing an offense." *Id.*

Here, Detective LaFave arrested Defendant for False Informing in violation of Indiana Code section 35-44.1-2-3(d)(1). Dkt. 29-2. That statute makes it a crime to provide "false information in the official investigation of the commission of a crime," if the person knows the information is false. Ind. Code § 35-44.1-2-3(d)(1). Detective LaFave had probable cause to believe that Defendant violated this statute.

Detective LaFave was sent to the Motel 6 hotel in response to a report that a suspect was in that area and was "armed and potentially dangerous." Dkt. 29-2. The suspect was also known to have violated his probation. Dkt. 36-1 ¶ 4. Therefore, Detective LaFave was engaged in the official investigation of a crime. *See e.g.*, *Smith v. State*, 660 N.E.2d 357, 358 (Ind. Ct. App. 1996) (holding that an officer was engaged in an investigation when he was sent to a residence to investigate reports of underage drinking and recognized someone with outstanding warrants.).

Defendant provided information that was objectively and demonstrably false when he told Detective LaFave that his name was Nick Smith and that he did not have a middle name. Dkt. 36-1 ¶¶ 8, 10. Defendant's first name is James, and he has a middle name—Nicholas. That Defendant gave his true last name does not make information he gave about his first name any less false. Defendant repeatedly insisted his name was Nick Smith even after Detective LaFave told him that he knew his name was James Smith. *Id.* ¶ 10; dkt. 29-2 at 2. Detective LaFave reasonably believed that Defendant was in fact James Smith, and lying about his identity, by pulling up Defendant's picture on his phone and corroborating his conclusion with Defendant's identifying tattoo. Dkt. 36-1 ¶ 8. Knowing that Defendant had given him false information, Detective LaFave reasonably concluded that Defendant was trying to mislead him and had probable cause to arrest Defendant. *Smith*, 660 N.E.2d at 359 (finding that a defendant provided false information under the statute when he provided an incorrect first name and birth date).

Defendant raises three arguments as to why there was no probable cause to justify the arrest. First, he claims that he "did not give a false name . . . because he had gone by 'Nick Smith' his entire life." Dkt. 39. But the statute criminalizes false information and Defendant told Detective LaFave that he did not have a middle name—a statement that is patently untrue. Whether other people had previously called Defendant "Nick Smith" is irrelevant. The relevant question is whether Detective LaFave had probable cause to believe that Defendant was lying to him based on the information he had.

Defendant next attempts to distinguish the cases in which courts have found providing a false name sufficient to support a False Informing conviction by arguing that in those cases "additional false information is given beyond just a false name." Dkt. 39 at 8. But the statute does not require a threshold amount of false information nor does it exempt certain categories of information. Providing any false information violates the statue.

Finally, Defendant claims that arresting Defendant for False Informing was unreasonable because a "reasonable person confronted with these same facts would have taken further steps" to figure out Defendant's identity. *Id.* at 8–9. But what someone else may have done under these circumstances does not address the question at hand—whether Detective LaFave had probable cause to arrest Defendant. When Defendant provided Detective LaFave with information the detective reasonably believed to be false, Detective LaFave had probable cause to arrest Defendant for providing false information. Therefore,

Defendant's arrest and the subsequent search of the backpack did not violate the Fourth Amendment.

### III.
### Conclusion

Neither Defendant's initial conversation with Detective LaFave nor the subsequent arrest and search violated the Fourth Amendment. Defendant's motion to suppress evidence is **DENIED**. Dkt. [29]. Because the contraband will be allowed as evidence for the reasons explained above, the Court need not address the attenuation doctrine or Defendant's Fourth Amendment waiver.

**SO ORDERED.**

Date: 3/26/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Joseph Holland Etling
SMITH & SMITH ATTORNEYS
jhetling2018@gmail.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
william.mccoskey@usdoj.gov

Kyle M. Sawa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kyle.sawa@usdoj.gov

William Gelder Smock
SMOCK & ETLING
smock.etling@frontier.com